IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCES ENDENCIA,<br><br>Plaintiff(s),<br><br>v.<br><br>AMERICAN PSYCHIATRIC ASSOCIATION, *et al.*<br><br>Defendant(s). | Case No. 21-cv-02360<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Frances Endencia, a prolific litigator, owned the Pampered Pet Veterinary Service, which she says experienced multiple break-ins between 1999 and 2007. After one such break-in in 2005, she contacted the Streamwood Police. Apparently at the police department's recommendation, the Illinois Department of Financial & Professional Regulation ("IDFPR") required her to undergo a psychiatric evaluation. As a result of the evaluation, the IDFPR suspended Endencia's veterinary license. Soon after, and seemingly unrelated, Endencia lost custody of her daughter. Endencia has filed numerous lawsuits in this court stemming from the alleged break-ins, losing her professional license, and losing custody of her daughter (now an adult). *See Endencia v. Am. Psych. Assoc., et. al.*, No. 1:19-cv-03161 (N.D. Ill. 2019); *Endencia v. Henry et. al.*, No. 1:18-cv-05477 (N.D. Ill. 2018); *Endencia v. DCFS of Glen Ellyn et. al.,* No. 1:18-cv-05476 (N.D. Ill. 2018); *Endencia v. IDFPR et. al.,* No. 1-17-cv-003306 (N.D. Ill. 2017); *Endencia v. IDFPR et. al.,* No. 1:17-cv-02045; *Endencia v. ADT, et. al.,* No. 1:08-cv-04541 (N.D. Ill. 2008).

1

Endencia brings this suit against over twenty defendants essentially rehashing claims she previously asserted. The defendants who have filed appearances have filed motion to dismiss and some have requested sanctions against Endencia. [8], [15], [19], [24], and [29]. After the motions were fully briefed, Endencia filed two motions to amend her complaint and requested leave to add new defendants. [47], [51] and [68]. For the reasons explained below, the Court grants Defendants' motions to dismiss and denies Endencia's motions for leave to amend.

**I.   Claims**

The Complaint is difficult to follow. Endencia purchased a veterinary practice from PMH Partners in 1999. Dr. Joel Price, Dr. Joel Price Jr. and Dr. John Coyne were apparently the previous owners. She alleges that PMH Partners is in conspiracy with ADT, the security company. PMH and ADT "utilize psychiatrists & police officers to frame their victims … to cause suspension of license and loss of income. [This is what happened to Plaintiff-Frances.]." Dkt. 1 at 11.

In Count I, Endencia alleges that Defendants Knox Box Co. (Knox Box), ADT, PMH Partners and Dr. Stafford Henry conspired to commit fraud against Endencia, the citizens of the United States, and the court under both 18 U.S.C. § 1031(a)(2) and the Civil RICO Act, 18 U.S.C. §1961. Dkt. 1 at 18. The fraud against her occurred when Knox Box sold master keys to Defendant Bartlett Fire and Police Departments. Endencia further alleges a fraud when defendants created local ordinances that required business owners to provide keys (presumably to local authorities). *Id.* Endencia references "consumer fraud" when she refers to § 1031, (*Id.* at 9), although

2

that statute governs fraud against the United States in contracting. Endencia alleges ADT stole from her, hired law enforcement, illegally monitored their clients, had an illegal exculpatory clause in its contract, and manually controlled the monitoring devices in their clients' businesses and homes. She also asserts that "courts" are a part of this conspiracy. *Id.*

Count II asserts a claim of fraud upon the Court. *Id.* at 17. This claim arises out of the 2008 administrative action where the Illinois Department of Financial and Professional Regulation (IDFPR) suspended her license to practice veterinary medicine. *Id.*

Count III also alleges fraud upon the court, this time based on the state court proceedings involving Endencia's daughter in 2009. Endencia brings this claim against the state court judge, the Honorable Lisa Fabiano (Fabiano), the Zeke Legal Clinic at Northern Illinois University[1] (NIU), and attorney Wendy Vaughn[2] (Vaughn), and Alexian Brothers Behavioral Health and its staff members Mohinder Chadha and Tina Bhargava who prepared reports and/or provided testimony at the 2009 hearing. Endencia claims she was "not allowed to examine witness testimony or interrogate before and during trial." *Id.* at 18. Defendants NIU, Mohinder Chadha,

---

[1] The Board of Trustees of Northern Illinois University (NIU) are correct that Zeke Legal Clinic is the improper party because it is not an entity that can be sued, but rather a sub-entity of NIU. Pursuant to Illinois law, when bringing a civil suit against NIU, the proper entity to sue is "The Board of Trustees of Northern Illinois University." *See* 110 ILCS 685 /30-40.

[2] Vaughn represented Plaintiff's mother in seeking an order of protection against Plaintiff and in the guardianship matter regarding custody of Endencia's teenage daughter. According to court records, Judge Fabiano granted the order of protection and transferred guardianship of the minor to Plaintiff's sister. The guardianship terminated in June of 2010 when Plaintiff's daughter turned 18.

3

Tina Bhargava and Alexian Brothers Behavioral Heath produced improper psychological reports during the hearing. Endencia also asserts that Bill Maffy of DCFS Glen Ellyn, Wheaton Youth Outreach (WYO)[3] and its staff psychologist, Dan Benyousky (Benyousky) caused "loss of affection of mother and child by informing family members not to allow them to speak to each other since July 2009." *Id.* at 18. Endencia asserts these same allegations in support of an "alienation of affection" claim in Count V. *Id.* at 19-20.

Endencia brings Count IV under a criminal statute, Unborn Victims of Violence Act, 18 U.S.C. § 1841, asserting that Benyousky "orchestrated the stress" that caused her daughter, Altessia, to have a miscarriage "by surrounding her with people who placed psychological violence to cause the death of her child." *Id.* at 19.

In Count VI, Endencia brings a claim for "attempt[] murder by Rockford Police officer." *Id.* She does not assert any facts to support this claim but cites a state case: *People of State of Ill. V. Endencia,* No. 1 2009-cf-000228 (Cir. Ct. 17th 2009).

Count VII does not name any defendants but criticizes the current practice of psychiatry. According to Endencia, psychiatry dehumanizes patients while psychiatrists corroborate with each other for financial gain, and are strategically located within law enforcement, among other things. *Id.* at 20. It is potentially aimed at the American Psychiatric Association ("APA").

---

[3] According to Defendant, Wheaton Youth Outreach (WYO) is not a legal entity but is a name used by Outreach Community Ministries, Inc., an Illinois not-for-profit entity. (Dkt. 20 at 2 n. 1). The Court will use (WYO) in this motion.

4

All defendants assert Endencia has failed to state a claim under Federal Rules of Civil Procedure 12(b)(6). ADT and Wheaton Youth Outreach, both of which have been sued several times by Endencia, assert *res judicata* and statute of limitations. ADT, as it has previously, also relies on an exculpatory provision in its contract. The defendants involved in the child custody action rely on the *Rooker-Feldman doctrine*, and the Honorable Lisa Fabiano asserts absolute judicial immunity.

**II.  Standard**

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)). In addition, the Court construes the *pro se* complaint liberally, holding it to a less stringent standard than lawyer-drafted pleadings. *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

### III. Analysis

#### A. Count I

Endencia's first claim is brought under 18 U.S.C. § 1031(a)(2) (fraud against the United States in contracting) and 18 U.S.C. § 1961 (RICO). It is not clear from Endencia's complaint or her response briefing how any Defendant has legally committed a criminal fraud on the United States in violation of 18 U.S.C. § 1031. As ADT notes, that statute does allow for private civil actions to address discrimination in "employment by an employer because of lawful acts done by the employee… in *furtherance of a prosecution* under [Section 1031]." 18 U.S.C. § 1031(h)(1) (emphasis added). But there are *no* allegations in the complaint that involve an employment relationship between Plaintiff and *any* defendant or that allow any inference of a fraud being committed on the United States.

Count I also relies on RICO, 18 U.S.C. § 1961 and § 1962(c), to assert a claim. It is well-settled that a RICO violation under §1962 requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Furthermore, §1961 clarifies that a pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992) (citations omitted).

In addition, the law requires RICO claims to be pled consistent with Fed. R. Civ. P. 9(b). This requires Endencia to allege "1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.*" Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007); *See also Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir.1998) (holding allegations of fraud in a civil RICO complaint are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires a plaintiff to plead all averments of fraud with particularity.").

Endencia alleges that ADT steals from its clients, "hires local law enforcement", and conspires with "the courts" to enforce the exculpatory provision in its contract. Dkt. 1 at 16. She asserts that "ADT [ ] has been stealing from their own clients," and "the Knox [sic] Box Co[.] [ ] has been selling the Knox Rapid Access System master locks to fire departments in USA [sic] and create local village ordinances requiring business owners provide keeps to the fire department." Dkt. 1 at 16. These allegations

7

fail to plausibly allege the existence of an enterprise that affects interstate commerce. Count I is dismissed.

### C. Count II

Endencia's second count charges "fraud against the court" and cites to *IDFPR v. Endencia,* No. 2005-01942. She claims that PMH Partners, the entity from which Endencia purchased her veterinary practice, and its owners were responsible for the indefinite suspension of her veterinary license. Dkt. 1 at 2, 17. She further alleges that "the psychiatric medical record had grossly distorted facts to create the diagnosis" and refusal of medication caused the suspension of her license. *Id.*

To assert fraud upon the court, Endencia must allege conduct that "seriously affects the integrity of the normal process of adjudication . . . defile[s] the court itself or that is perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." *United States v. Hosseini*, No. 05 CR 254, 2016 WL 1569412, at *2 (N.D. Ill. Apr. 19, 2016). It is clear from this and prior cases that Endencia disagrees with Dr. Henry's diagnosis. *See Endencia v. Henry et. al.,* 18-cv-05477 (N.D. Ill. 2018) (Dow, J). But Endencia does not allege how any court was defrauded by any medical findings. In fact, Count II states that after her license was suspended: "she sought several psychiatric evaluations, only to discover medicalization, lack of science in creating psychiatric disorders (aka diagnosis), and the psychiatric medical record had grossly distorted facts to create the diagnosis. Dr Alex Reynish of Behavioral Health Care Associates charged her $1,500. He refused to contradict Dr Henry's report…" *Id.* at 17. These

allegations do not show that any person impacted the integrity of the judicial process. Count II is dismissed.

### D. Counts III through V

Counts III and V focus on the custody hearing regarding her daughter, Altessia, in 2009. They assert fraud on the court and alienation of affection, respectively. Dkt. 1 at 18 – 19. Count IV asserts a claim under the Unborn Victims of Violence Act on behalf of her daughter who had a miscarriage.

Count III alleges that attorney, Wendy Vaughn, and Zeke Legal Clinic at NIU, "produced witness [sic] plaintiff never met and saw before trial." Dkt. 1 at 18. Endencia also alleges that psychiatric reports were provided without proper interviews and the court improperly overruled objections made by Endencia. *Id.* Not only do Endencia's assertions fail to state a plausible claim of fraud upon the court, but federal courts lack subject matter jurisdiction to review state court proceedings under the *Rooker-Feldman* doctrine. Under *Rooker-Feldman*, it is well-settled that courts, except for the Supreme Court, lack jurisdiction to upset the judgments of state courts. Endencia cannot attack the state court custody proceedings in this court. *See also Guyinn v. City of Indianapolis*, 79 Fed. Appx. 233, 234 (7th Cir. 2003) ("proper remedy for fraud on the court … is a request that the rendering court reopen its judgement. Collateral attack in a different judicial system is not an option."). The Court lacks jurisdiction to consider claims attacking the state court guardianship proceedings.

Additionally, Endencia has named the state court judge, the Honorable Lisa Fabiano. Fabiano is protected by absolute judicial immunity. *See Dawson v. Newman*, 419 F. 3d 656, 660-61 (7th Cir. 2005) (granting judicial immunity to defendant judge named for making judicial decision and using her discretion in her official role). *Kowalski v. Boliker*, 893 F.3d 987, 999 (7th Cir. 2018) (judicial immunity applies to an Illinois judge of the Circuit Court of Cook County). Endencia takes issue with Judge Fabiano's evidentiary rulings and findings. Fabiano is entitled to judicial immunity. Count III is dismissed with prejudice.

In Count IV Endencia attempts to state a claim against psychotherapist Benyousky under the Unborn Victims of Violence Act of 2004. 18 U.S.C. § 1841(a)(1). This criminal statute does not provide a private cause of action.[4] Count IV is dismissed with prejudice.

Lastly, Endencia's claim for "alienation of affection" in Count V also fails. She asserts that the named defendants manipulated her daughter causing her to refuse to visit or speak with Endencia. Dkt. 1 at 19. There is no state or federal cause of action for alienation of affection. Illinois abolished the law allowing recovery for this tort in 2016. *See* 740 ILCS 5/7.1(b) ("An action may not be brought for alienation of affections based on facts occurring on or after the effective date of this amendatory Act of the 99th General Assembly.").[5] Further, when this tort existed in Illinois, it

---

[4] Even if there was a cause of action available, Endencia would not have standing to bring it and she does not state coherent facts that plausibly implicate Benyousky. Endencia states that Benyousky "orchestrated the stress to cause the death of Altessia's unborn child by surrounding her with people who placed psychological violence to cause death of her child." Dkt. 1 at 19.

[5] The conduct Endencia complains about took place after 2006.

10

was limited to loss of affection between spouses. *See Roberts v. Zemen*, 191 F.R.D. 575 (N.D. Ill. 2000) ("[T]he elements [include] love and affection of the *spouse* for the plaintiff.") (emphasis added). Count V is dismissed with prejudice.

### E. Count VI

Liberally construing Count VI, Endencia brings a claim against an unknown Rockford police officer for attempting to murder her. Endencia does not state facts, allegations, or background for this claim. She simply provides a citation to a 2009 Illinois state case, *People of State of IL. [sic] v. Endencia,* No 1 2009-CF-000228. Simply citing a thirteen-year-old case without any allegations or facts is well below the required standard under Fed. R. Civ. P. 8. In a response brief, Endencia states that an officer attempted to kill her "utilizing the hold that killed George Floyd" when she was attempting to pick her daughter up from college. Dkt. 34 at 4. Even with these additional facts, it is not clear what cause of action Endencia is attempting to bring, or against whom. Furthermore, any case arising out of 2009 as the citation to the Illinois case implies, would be barred by the status of limitations. For this reason, Count VI is dismissed with prejudice.

### F. Count VII

Endencia's last claim, a rambling indictment of psychiatric medicine also fails. She argues that the practice of psychiatry causes brain pathology, dehumanizes patients and that doctors share medical records. Dkt. 1 at 20. She states that because psychiatry is not based on science "it is a consumer fraud against the United States." *Id.* She claims that the practice is a violation of the fourteenth amendment. *Id.* at 21.

11

She does not name any particular defendant, allege dates of bad acts or plead any detail other than taking issue with the industry. This Count is perhaps aimed toward the APA. While Endencia is free to have an opinion on the medical industry, that is not a sufficient basis to bring a claim to federal court. Count VII is dismissed with prejudice.

### G. Res Judicata as to certain claims

Several defendants raise *res judiciata* as a basis to dismiss certain claims. *Res judicata* bars all claims that arise from the same core of operative facts, regardless of whether later suits assert different legal theories. *See White v. Ill. State Police*, 15 F.4th 801, 809 (7th Cir. 2021). The test stems from the rule that a party must allege in one proceeding all claims for relief arising out of a single occurrence or be precluded from pursuing them in the future. *Bernstein v. Bankert*, 733 F.3d 190, 227 (7th 2013); *see also Nalco Co. v. Chen*, 843 F.3d 670, 674 (7th Cir. 2016) (citing Restatement (Second) of Judgments § 24 (1982)). If the doctrine applies, the plaintiff is barred from raising not only every matter that was actually determined in the first suit, but also every matter that might have been raised and determined in that suit. *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017) (internal citations and quotation omitted).

*Res judicata* precludes Endencia from raising her claims regarding (1) her purchase of her veterinary business, (2) the alleged thefts at her business that resulted in her undergoing a psychiatric evaluation; (3) the loss of her license. Endencia's efforts to repackage the same facts into different legal theories is exactly

what is disallowed by *res judicata*. These matters have been litigated *repeatedly* and any claims that could have been made are now precluded. See *Endencia v. APA et al,* 19-3161 2019 WL 4934601 (N.D.Ill. Oct. 7, 2019) (Rowland, J.), *aff'd*, 2020 WL 6386595 (7th Cir. 2020) (challenging the loss of her professional license under the Federal Trade Commission Act and as negligent misrepresentation); *Endendia v. Henry et al,* 18-5477 (Oct. 24, 2018) (Dow, J.) (fraud claims against ADT and PMH Partners and others challenging the purchase of the veterinary practice); and *Endencia v. Rush Behavioral Health*, 2014 IL App (1st) 132129-U, *appeal denied*, 2015 Ill. LEXIS 573 (Ill. 2015), *cert. denied*, 2015 U.S. LEXIS 7658 (U.S., Nov. 30, 2015). Counts I and II are therefore dismissed with prejudice.

### H. Sanctions

Defendants APA and Wheaton Youth Outreach have requested sanctions in the form of attorney's fees or an order barring Endencia from bringing suits in this Court without prior leave of court. Dkt. 8; Dkt. 19. The Seventh Circuit is clear that district courts maintain discretion to grant sanctions. *See Brown v. Federation of State Medical Bds. of the United States*, 830 F.2d 1429, 1438 (7th Cir. 1987); *See also See McCready v. eBay, Inc.,* 453 F.3d 882, 892 (7th Cir. 2006) (recognizing the inherent power of the courts to sanction litigants who have "abused the judicial process with frivolous litigation" and caused "the harassment of opposing parties" and "waste[d] . . . limited and valuable judicial resources"); *See*, e.g., *In re Anderson*, 114 S. Ct. 1606, 1608 (1994) (holing that any sanction imposed by a federal court for the abuse of its process should be tailored to the abuse). Further, pro se litigants are

13

not immune from sanctions. *See Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995).

This Court will not, on its own, require pre-filing review of Endencia's filings. But the Court will forward a request to the Northern District of Illinois Executive Committee to determine whether Endencia should be classified as a restricted filer based on her prolific and unsuccessful, essentially frivolous litigation track record.[6] If deemed a restricted filer, all future filings by Endencia would be reviewed pursuant to Northern District of Illinois procedures. The Court declines to award fees.

## IV. Motion to Amend and Motion to Add Defendants

The Court denies Endencia's motions to amend or correct the complaint or to add additional defendants. [51], [68]. Leave of the court to amend may be "freely give[n]" "when justice so requires". Fed. R. Civ. P. 15(a)(2). Denial of an amendment is appropriate, however, when an amendment would be futile. *Villars v. Kubiatowski*, 128 F. Supp. 3d 1039, 1043 (N.D. Ill. 2015). An amended complaint is futile if it asserts the same facts, asserts a previously determined claim, fails to state a valid theory of liability, or could not withstand a motion to dismiss. *Id.* (citing *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992)). *See also Li v. Illinois Dep't. of Financial*

---

[6] In addition to the federal claims listed previously, the court is aware of the following state court matters: *Endencia v. Rush Behavioral Health*, 2014 IL App (1st) 132129-U; *Endencia v. Wells Fargo Bank*, 93 N.E.3d 1062 (Ill. 2017); *Endencia v. Rush Behavioral Health*, 577 U.S. 1008, 136 S. Ct. 554, 193 L. Ed. 2d 429 (2015); *Endencia v. Adtalem Glob. Educ., Inc.*, 2021 IL App (2d) 200378-U*; Endencia v. Illinois Dept. of Prof'l Regulation*, 391 Ill. App. 3d 1110, 982 N.E.2d 984 (1st Dist. 2009), *aff'd Endencia v. Vill. of Streamwood, Ill.*, 565 U.S. 939, 132 S. Ct. 445, 181 L. Ed. 2d 253 (2011*); Endencia v. Arce*, 141 S. Ct. 2626, 209 L. Ed. 2d 753 (2021); *Endencia v. Vill. of Streamwood*, 949 N.E.2d 658 (Ill. 2011); *Endencia v. Wells Fargo Bank*, 138 S. Ct. 1994, 201 L. Ed. 2d 256 (2018);

14

*and Professional Regulation*, 2018 U.S. Dist. LEXIS 48734, at *17 (N.D. Ill. Mar. 23, 2018) (denying leave to amend because amendment would be futile).

Neither Endencia's motion to amend nor her proposed amended complaint demonstrate that the defects in this case would be cured by the amended complaint.[7] To the contrary, her proposed third amended complaint is more unintelligible than her original complaint. It raises the same counts against largely the same defendants. Unlike the operative Complaint, it cites to case authority and to the Bible. Significantly, Endencia did not respond to any of the deficiencies raised by Defendants' motions. Instead, her amended complaint raises the same claims with further unclear details regarding her past.

Additionally, Endencia requests to add new defendants, IDFPR Administrative Judge Jeffrey Canavan and the American Medical Association (AMA). [68]. She requests to add the American Medical Association for supporting consumer fraud by silence, and Judge Canavan for indefinitely suspending her veterinary license. Dkt. 68 at 1. The Court finds that adding these defendants would be futile and therefore denies the motion.

Both Endencia's motion to amend and her motion to add defendants are denied.

**V. Conclusion**

For the reasons explained herein, the Court grants Defendants' motions to dismiss. [8], [15], [19], [24], and [29]. The requests for sanctions are denied but the

---

[7] On December 8, 2021, Endencia requested leave to file a Third Amended Complaint and included the proposed complaint. [47]. A week later, on December 15, 2021, she again sought leave to amend her complaint but did not attach a proposed updated version of the complaint. [51].

Court will refer Ms. Endencia to the Executive Committee of the Northern District of Illinois for a determination whether she should be classified as a restricted filer. The Court denies Endencia's motions for leave to amend and add defendants. [51], [68]. The Clerk is directed to substitute The Board of Trustees of Northern Illinois University for Zeke Legal Clinic. The Clerk is directed to enter judgement in favor of all the Defendants.[8] Civil case terminated.

E N T E R:

Dated: January 11, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[8] It appears all defendants were served improperly as notice was sent via United States Postal Service. The following defendants have not appeared in this suit: PMH partners; Dr. Joel Price, Sr.; Dr. Joel Price, Jr.; Dr. John Coyne (DVM); Dan Maloney; Dr. Stafford Henry; the Knox Company; Dan Benyousky; Alexian Brother Behavioral Health; Nathan Hamacek; Bartlett Fire/Police Department; James Keegan; Mandarino; Laura Siedleski; Steve Kisch; Bill Maffy of DCFS Glen Ellyn; DCFS Glen Ellyn; and Mohinder Chadha. These defendants are dismissed with prejudice based on *res judicata*, failure to state a claim and the futility of any amendment. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("[C]ourts are within their discretion to dismiss with prejudice where a party does not make [a] showing [that the party might cure the defects in the complaint]."); *Li v. Illinois Dep't. of Financial and Professional Regulation*, 2018 U.S. Dist. LEXIS 48734, at *17 (N.D. Ill. Mar. 23, 2018) (finding claim preclusion barred plaintiff's action against two defendants who had not yet appeared).

16